**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOVA SERVICES, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>RECLEIM NOVA, LLC,<br>RECLEIM, LLC,<br>BLUE GRANITE LOGISTICS, LLC,<br>LL SEA INVESTMENTS, LLC,<br>BGL HOLDINGS, LLC,<br>BLUE GRANITE FREIGHT, LLC, and<br>RECLEIM LOGISTICS, LLC,<br><br>     Defendants. | C.A. No. 21-00020-MN |

**DEFENDANTS RECLEIM NOVA, LLC, RECLEIM LLC,**
**BLUE GRANITE LOGISTICS, LLC, LL SEA INVESTMENTS, LLC, BGL HOLDINGS, LLC,**
**BLUE GRANITE FREIGHT, LLC, AND RECLEIM LOGISTICS, LLC'S**
**AMENDED ANSWER TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIM**

Recleim Nova, LLC ("Recleim Nova"), Recleim LLC ("Recleim"), Blue Granite Logistics,

LLC ("Blue Granite Logistics"), LL Sea Investments, LLC ("LL Sea"), BGL Holdings, LLC

("BGL Holdings"), Blue Granite Freight, LLC ("Blue Granite Freight"), and Recleim Logistics,

LLC ("Recleim Logistics") (collectively, "Defendants"), by and through counsel, hereby submit

this Answer and Defenses to the First Amended Complaint (the "Amended Complaint") of

Plaintiff Nova Services, Inc. ("Plaintiff"), and respectfully show the Court as follows:

**INTRODUCTION**

2.[1]

In addition to the breach of contract and fraud action pled below, Plaintiff Nova Services
Inc. (sometimes "Nova Services" or "Creditor") seeks legal and equitable relief against the
Defendants, which have acted in concert to defraud Nova Services by engaging in fraudulent

---

[1] The first numbered paragraph of the Amended Complaint begins at 2 instead of 1.

conveyances in violation of the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), 6 *Del. C.* §§ 1301 et seq.

**RESPONSE:** Defendants admit only that the Plaintiff purports to seek the relief stated in Paragraph 2 of the Amended Complaint.  Defendants deny engaging in wrongful conduct and that Plaintiff is entitled to any relief.

3.

Since at least December 31, 2019, Defendant Recleim Nova, LLC ("Recleim Nova"), a Delaware limited liability company with its principal offices at 34 Old Ivy Road, Suite 200, Atlanta, Georgia, has owed, and still owes Nova Services the sum of $3,449,567.71, pursuant to a certain Asset Purchase Agreement ("APA") described below.  The APA was entered into by Nova Services, Recleim Nova, and its parent, Recleim LLC ("Recleim"), a Delaware limited liability company also with its principal offices at 34 Old Ivy Road, Suite 200, Atlanta, Georgia, effective as of May 5, 2017.

**RESPONSE:** Defendants deny that Recleim Nova, a Delaware limited liability company with its principal offices at 34 Old Ivy Road, Suite 200, Atlanta, Georgia has owed and still owes Nova Services the sum of $3,499,567.71, pursuant to a certain Asset Purchase Agreement dated as of May 5, 2017 (the "May 5, 2017 APA").  Defendants admit that the May 5, 2017 APA was entered into by Nova Services, Recleim Nova, and its parent, Recleim, a Delaware limited liability company also with its principal offices at 34 Old Ivy Road, Suite 200, Atlanta, Georgia, effective as of May 5, 2017.

4.

Since about February 2020, Defendant Recleim Nova has assigned, conveyed, and in some instances removed from the State of Maryland, valuable assets with the intent and effect of rendering Recleim Nova insolvent so as to defraud its creditors, including Nova Services.

**RESPONSE:** Defendants deny the allegations in Paragraph 4 of the Amended Complaint.

5.

Plaintiff Nova Services originally filed suit against Defendants Recleim Nova, Recleim, Blue Granite Logistics, LLC, and LL Sea Investments, LLC, in the Circuit Court for Baltimore County, Maryland, on August 3, 2020.  On September 23, 2020, Defendants filed a Notice of Removal with the office of the United States District Court for the District of Maryland.  By an

Order of the United States District Court of Maryland dated January 11, 2021, this case was transferred to the United States District Court for the District of Maryland.

**RESPONSE:** Defendants admit the allegations in Paragraph 5 of the Amended Complaint.

## JURISDICTION AND VENUE

6.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists between the Plaintiff and the Defendants.  This Court also has supplemental jurisdiction over this action under 28 U.S.C. § 1367.  This Court also has personal jurisdiction over all parties to this action pursuant to the provisions of the APA.

**RESPONSE:** Defendants admit the allegations in the first two sentences of Paragraph 6 of the Amended Complaint, but Defendants deny the allegations in the third sentence.

7.

Venue over the claims in this Court is proper based on the provisions of the APA and based also on the Order entered on January 11, 2021, by the United States District Court for the District of Maryland.

**RESPONSE:** Defendants admit the allegations in Paragraph 7 of the Amended Complaint.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

### History of May 5, 2017 Asset Purchase Agreement with Nova Services Inc.[2]

8.

On October 30, 2000, Guy Naylor formed Nova Services Inc. ("Nova Services"), a Maryland corporation in good standing, with its principal office located at 2500 Grays Road, Dundalk, Maryland 21222.  Mr. Naylor owns 100% of the stock of Nova Services.  Over the next 17 years, Nova Services grew into a multi-million dollar appliance recovery and recycling business with customers such as Lowe's Home Centers, LLC, BGE Home and other major retailers who sell refrigerators, freezers and other household appliances.

---

[2] Headings are reproduced solely for convenience; to the extent a response is required, Defendants deny any allegation contained in a heading.

**RESPONSE:** Defendants are without knowledge of the allegations in Paragraph 8 of the Amended Complaint and therefore deny the allegations.

9.

On or about June 17, 2016, Plaintiff Nova Services received a proposal from Recleim to purchase substantially all of Nova Services' assets. Recleim then had, and it continues to operate, its "flagship" plant in Graniteville, South Carolina. Recleim's website states that it "provides collection, transportation, demanufacturing[3] and resource recovery services for end-of-life appliances and converts the appliances and other items into commodities such as plastic, aluminum, copper, steel and pelletized foam, which are then sold for reuse."

**RESPONSE:** Defendants admit that on June 17, 2016, Plaintiff received a proposal from Recleim to purchase substantially all of Nova Services' assets. Defendants admit that a subsidiary of Recleim then had, and currently operates, its "flagship" plant in Graniteville, South Carolina. Defendants admit that Recleim's website states that it "provides collection, transportation, demanufacturing and resource recovery services for end-of-life appliances and converts the appliances and other items into commodities such as plastic, aluminum, copper, steel and pelletized foam, which are then sold for reuse." Defendants deny any remaining allegations in Paragraph 9 of the Amended Complaint.

a.[4]

Recleim's offered purchase price was based on its assessment that Nova Services' business had an "Enterprise Value" of $7,000,000.00.

**RESPONSE:** Defendants deny the allegations in Paragraph a of the Amended Complaint.

---

[3] Footnote 1 to the Amended Complaint states, "Demanufacturing refers to a process by which consumer appliances and electronics are dismantled and valuable materials are recovered in an environmentally sound manner." To the extent a response is required, Defendants admit that the quoted language is one way to describe demanufacturing.

[4] This allegation of the Amended Complaint is identified alphanumerically rather than numerically.

10.

On October 7, 2016, Recleim caused Recleim Nova to register to do business in the state of Maryland.

**RESPONSE:** Defendants admit the allegations in Paragraph 10 of the Amended Complaint.

11.

Negotiations relating to the acquisition terms and Recleim's due diligence process culminated in the execution of the APA described above.

**RESPONSE:** Defendants deny the allegations in Paragraph 11 of the Amended Complaint.

12.

As part of the transaction, Mr. Naylor entered into an Employment Agreement dated as of May 5, 2017, to work in the position of General Manager of Recleim Nova's Dundalk, Maryland operations. Mr. Naylor held that position until his employment was constructively terminated on May 5, 2020.

**RESPONSE:** Defendants admit that as part of the transaction, Mr. Naylor entered into an Employment Agreement dated as of May 5, 2017, to work in the position of General Manager. Defendants deny that this position was limited to Recleim Nova's Dundalk, Maryland operations. Defendants deny that Mr. Naylor held that position until his employment was constructively terminated on May 5, 2020.

13.

On April 3, 2018 and in accordance with the terms of the APA, Mr. Naylor sent a letter, as President of Nova Services, to the attention of Pete Davis, the managing principal of Recleim Nova. Mr. Davis is also the managing principal of a private equity investment firm known as Peachtree Investments Solutions, LLC ("Peachtree"), which he formed in 2008 to advise businesses, raise money for "tax-advantaged" investments and acquire the assets of companies like Nova Services. In fact, following its purchase of Nova Services' Dundalk-based business, Recleim and Mr. Davis orchestrated leveraged buyouts of recycling plants in Philadelphia, Pennsylvania and Lima, Ohio. Mr. Davis is also the manager of Defendant Blue Granite Logistics, LLC.

**RESPONSE:** Defendants admit that Mr. Naylor sent a letter, as President of Nova

Services, to the attention of Pete Davis, the managing principal of Recleim Nova, on April 3, 2018. Defendants admit that Mr. Davis is also the managing principal of a private equity investment firm known as Peachtree Investments Solutions, LLC ("Peachtree"), which he formed in 2008 to advise businesses, raise money for "tax-advantaged" investments and acquire the assets of certain companies. Defendants admit that following its purchase of assets of Nova Services' Dundalk-based business, Recleim and Mr. Davis entered into asset purchase agreements with recycling plants in Philadelphia, Pennsylvania and Lima, Ohio. Defendants further admit that Mr. Davis is the manager of Blue Granite Logistics, LLC. Defendants deny any wrongdoing or that the above facts support any request for relief and any remaining allegations in Paragraph 13 of the Amended Complaint.

14.

Nova Services' April 3, 2018 letter notified Recleim Nova that it had breached the APA and it requested that Recleim Nova cure its breach. Upon receiving the letter, Mr. Davis complained to Mr. Naylor that he had sent the formal notice of default as required by the terms of the APA. Mr. Davis assured Mr. Naylor that he would take such actions as would be necessary for Recleim Nova to cure its breach and fulfill its obligations under the APA. In fact, Recleim did not cure its breach of the APA.

**RESPONSE:** Defendants admit that Nova Services' April 3, 2018 letter notified Recleim Nova that it had breached the May 5, 2017 APA and it requested that Recleim Nova cure its breach. Defendants deny that upon receiving the letter, Mr. Davis complained to Mr. Naylor that he had sent the formal notice of default as required by the terms of the May 5, 2017 APA. Defendants deny that Mr. Davis assured Mr. Naylor that he would take such actions as would be necessary for Recleim Nova to cure its breach and fulfill its obligations under the May 5, 2017 APA. Defendants deny that Recleim did not cure its breach of the May 5, 2017 APA, as Defendants deny any breach. Defendants deny any remaining allegations in Paragraph 14 of the Amended Complaint.

15.

Despite Nova Services' repeated requests for audited financial statements as required by the APA, neither Recleim Nova nor Mr. Davis delivered on their assurances to provide the same. Instead, Mr. Naylor discovered that Recleim had misallocated expenses relating to the operations of its Philadelphia and other facilities to Recleim Nova. By manipulating Recleim Nova's books and overburdening it with improper expenses, Recleim and Mr. Davis reduced Recleim Nova's net revenues and impaired its ability to pay the over $3.4 million balance of the purchase price due to Nova Services. Recleim burdened Recleim Nova with expenses of its operations with the effect that Recleim Nova would never show a profit with which to pay Nova Services the unpaid balance due of $3.4 million.

**RESPONSE:** Defendants deny the allegations in Paragraph 15 of the Amended Complaint.

16.

Recleim and Recleim Nova breached the APA in other respects, including, but not limited to, failing to pay certain liabilities Recleim Nova had assumed under the APA and other debts incurred by Recleim Nova unrelated to Nova Services. As a direct result of Recleim Nova's default and failure to pay its bills, its creditors began suing Nova Services to collect debts owed by Recleim Nova.

**RESPONSE:** Defendants deny the allegations in Paragraph 16 of the Amended Complaint.

17.

On or about September 16, 2019, Whit's Corporation sued Recleim Nova and Nova Services for $68,930.00 in the Circuit Court of St. Louis County, Missouri (Case no. 19SLCC04053) for goods and services Whit's Corporation provided to Recleim Nova. Mr. Davis promised to defend Nova Services and pay the debt; however, that did not occur and Recleim Nova's failure to defend the suit caused judgment to be entered in that case against Nova Services for $68,930.00.

**RESPONSE:** Defendants admit that on or about September 16, 2019, Whit's Corporation sued Recleim Nova and Nova Services for $68,930.00 in the Circuit Court of St. Louis County, Missouri (Case no. 19SLCC04053) for goods and services Whit's Corporation provided to Recleim Nova. Defendants deny that Mr. Davis promised to defend Nova Services and pay the debt. Defendants deny that Recleim Nova's failure to defend the suit caused judgment to be

entered in that case against Nova Services for $68,930.00.

18.

On December 17, 2019, as a direct result of Recleim Nova's failure to timely pay $59,316.46 owed to Abrava Way, Inc., Nova Services was named as a co-defendant in a trespass and non-payment of rent action brought by Abrava Way, Inc. in the District Court of Providence Plantations, Rhode Island (Civil Action No. 3CA-2019-12455).   Once again, Mr. Naylor complained to Pete Davis that Recleim and Recleim Nova were destroying Mr. Naylor's good credit history and Nova Services' good credit standing.

**RESPONSE:** Defendants admit that on December 17, 2019, Nova Services was named as a co-defendant in a trespass and non-payment of rent action.  Defendants deny that Mr. Naylor complained to Pete Davis that Recleim and Recleim Nova were destroying Mr. Naylor's good credit history and Nova Services' good credit standing.

19.

During the period from at least July 2019 through and including the date of this First Amended Complaint, Recleim Nova has caused Nova Services to be billed and dunned due to Recleim Nova's failure to pay its debts as they come due, including, but not limited to, $1,309.95 which was owed to M & G Materials Handling Co. of East Providence, R.I. as of July 2, 2019; $522.31 which was owed to Service Tire Truck Centers of Bethlehem, PA. as of December 5, 2019; $1,652.00 which was owed to Pinnacle Heating & Air Conditioning, Inc. as of December 31, 2019; $13,466.40 which was owed to McClung-Logan Equipment Co. of Baltimore, MD. as of January 17, 2020; $534.29, which was owed to Cox Business for services provided to Recleim Nova at its Lincoln, R.I. facility; and $1,214.70 and $4,609.03 which amounts were owed to BG & E for services provided to Recleim Nova under two separate accounts.  Plaintiff Nova Services had no legal responsibility for any of the foregoing billings.

**RESPONSE:** Defendants deny the allegations in Paragraph 19 of the Amended Complaint.

20.

On more than one occasion in 2020, Mr. Davis has spoken about transferring some of Recleim Nova's assets to a company called "Blue Granite."  Mr. Naylor told Mr. Davis that it was not proper to gradually strip Recleim Nova of its assets.

**RESPONSE:** Defendants deny the allegations in Paragraph 20 of the Amended Complaint.

21.

On or about July 27, 2020, Mr. Naylor discovered that on February 3, 2020, Mr. Davis caused Blue Granite Logistics, LLC ("Blue Granite") to be formed as a Delaware limited liability company.  On February 7, 2020, Mr. Davis signed and filed an application with the South Carolina Secretary of State for a Certificate of Authority for Blue Granite to transact business in South Carolina.  Recleim and Blue Granite have facilities and/or offices in Graniteville, South Carolina. Defendant LL Sea Investments LLC ("LL Sea") is identified on Mr. Davis' Application as the manager of Blue Granite with the same address of Recleim, Recleim Nova and Peachtree, that is 34 Old Ivy Road NE, Suite 200, Atlanta, Georgia.

**RESPONSE:** Defendants are without knowledge as to what Mr. Naylor believes he discovered and therefore deny any allegations as to Mr. Naylor's alleged "discoveries." Defendants admit that on February 7, 2020, Mr. Davis signed and filed an application with the South Carolina Secretary of State for a Certificate of Authority for Blue Granite Logistics to transact business in South Carolina.  Defendants admit that Blue Granite Logistics and a Recleim subsidiary has offices in Graniteville, South Carolina.  Defendants admit that LL Sea is identified on Mr. Davis' Application as the manager of Blue Granite Logistics, with the same address of Recleim, Recleim Nova and Peachtree, that is 34 Old Ivy Road NE, Suite 200, Atlanta, Georgia. Defendants are without knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 21 of the Amended Complaint and therefore, deny the allegations.

22.

On May 5, 2020, Mr. Naylor, as President of Nova Services, sent a notice of breach letter to Recleim Nova and Mr. Davis.  Among other breaches of the APA described in the notice letter was Recleim's failure to satisfy liabilities arising from Recleim Nova's business operations, including the court cases described in paragraphs 15, 16 and 17.  Nova Services' letter warned Recleim Nova and Mr. Davis that any transfer or encumbrance of assets would likely render Recleim Nova insolvent and any such transactions would constitute a violation of the Uniform Fraudulent Transfer Act.

**RESPONSE:** Defendants admit that on May 5, 2020, Mr. Naylor, as President of Nova Services, sent a notice of breach letter to Recleim Nova and Mr. Davis.  Defendants admit only

that the letter described Recleim's alleged failure to satisfy liabilities arising from Recleim Nova's

business operations and warned Recleim Nova and Mr. Davis that any transfer or encumbrance of

assets would likely render Recleim Nova insolvent and any such transactions would constitute a

violation of the Uniform Fraudulent Transfer Act, but deny any wrongdoing and any other

remaining allegations in Paragraph 22 of the Amended Complaint.

23.

Since sending Nova Services' May 5, 2020 notice of breach, Nova Services' President,
Mr. Naylor, discovered that Mr. Davis caused Recleim Nova to assign, convey and/or remove from
the State of Maryland valuable assets with the intent and effect of rendering Recleim Nova
insolvent so as to defraud its creditors, including Nova Services.  As of July 31, 2020, Recleim
Nova has already removed assets from the State of Maryland to Recleim's Philadelphia,
Pennsylvania facility, including at least 20 van trailers (both 48 foot trailers and 53 foot trailers),
each of which has a value of approximately $2,000.00.  At the time, Recleim Nova conveyed
and/or removed those assets, it was and continues to be insolvent.

**RESPONSE:**  Defendants are without knowledge as to what Mr. Naylor believes he

discovered and therefore deny any allegations as to Mr. Naylor's alleged "discoveries."

Defendants admit only that certain assets referenced were transferred in the normal course of

business, but deny any wrongdoing and deny that Recleim Nova or any other entity assigned,

conveyed or removed any valuable assets with the intent and effect of rendering Recleim Nova

insolvent so as to defraud its creditors.  Defendants deny the remaining allegations in Paragraph 23

of the Amended Complaint.

24.

On July 2, 2020, Nova Services' attorneys, Smith, Gildea & Schmidt, LLC, sent a notice
of default letter to Recleim Nova and Mr. Davis concerning Recleim Nova's breach of the APA.
The letter also notified Recleim Nova that conveyances made or created by it were in violation of
the Maryland Uniform Fraudulent Conveyances Act and the Delaware Uniform Fraudulent
Transfer Act.  Demand was made for Recleim Nova to provide Nova Services' attorneys with a
complete description of all conveyances made by, and all property received by Recleim from,
Recleim Nova so that arrangements could be made for the return of all such property.

**RESPONSE:**  Defendants admit only that the letter is accurately portrayed, but deny any

wrongdoing or that the letter supports any of Plaintiff's requested relief. Defendants deny any remaining allegations in Paragraph 24 of the Amended Complaint.

25.

Nova Services' attorneys also sent a letter on behalf of Nova Services to Blue Granite Freight, LLC of Graniteville, South Carolina, on July 2, 2020, cautioning it about accepting conveyances from Recleim Nova or transferring to third parties property it received from Recleim Nova. Upon information and belief, Blue Granite Freight, LLC is affiliated with Blue Granite Logistics, LLC and controlled by Pete Davis or Peachtree. As of this date, Nova Services' attorneys have not received a response from Blue Granite Freight, LLC.

**RESPONSE:** Defendants admit that Nova Services' attorneys also sent a letter on behalf of Nova Services to Blue Granite Freight of Graniteville, South Carolina, on July 2, 2020, cautioning it about accepting conveyances from Recleim Nova or transferring to third parties property it received from Recleim Nova and that Blue Granite Freight did not respond to the July 2, 2020 letter by contacting Nova Services' attorneys. Defendants admit that Blue Granite Freight is affiliated with Blue Granite Logistics and controlled by Mr. Davis. Defendants deny any wrongdoing and any remaining allegations in Paragraph 26 of the Amended Complaint.

**Defendants' Less Than Perfect Fraudulent Shell Game**

**The February 3, 2020 Shell Move**

26.

In November 2021, as part of Defendants' responses to discovery in this case, Defendants produced documents establishing that Defendants have acted in concert to move, and they have moved, assets around to avoid creditors, including Plaintiff Nova Services Inc. Upon information and belief, Recleim is the parent company, which owns, operates, manages and/or controls alter-ego affiliates, subsidiaries and other business entities including, but not limited to, Recleim Nova, LLC, Recleim Logistics, LLC, LL Sea Investments, LLC, BGL Holdings, LLC, Blue Granite Logistics, LLC, and Blue Granite Freight, LLC (sometimes hereinafter collectively referred to as the "Recleim-Controlled Entities"). One or more of the Recleim-Controlled Entities enter into contracts, pursuant to which they provide one or more aspects of recycling and disposal services to retailers such as Lowe's (e.g. transportation services, logistics, disposal or recycling). Recleim-Controlled Entities, among other things, retrieve large shipments of used appliances such as refrigerators, dishwashers, washers and dryers as Lowe's and other retailers sell new appliances to the general public. As described in paragraph 7 above, Recleim or one of its affiliates sorts through those goods and decides what is saleable overseas and packages them and sells them abroad. For

those products not saleable intact, Recleim or one of its affiliates breaks down the goods and pulls out those components that can be sold either as parts or raw material.  It disposes of the portions of the goods that have no value.

**RESPONSE:** Defendants deny the first and second sentences of Paragraph 26 of the Amended Complaint.  Except for the reference to "as described in Paragraph 7 above," Defendants admit the remaining allegations in Paragraph 26 of the Amended Complaint.

27.

In the three (3) years following the purchase of assets from Plaintiff Nova Services, Defendants Recleim and Recleim Nova did not fulfill its obligations to Nova Services or Guy Naylor.  After the APA was signed and they became employees of Recleim Nova, LLC, Billie Porter and Erin Summers-Bogdan repeatedly requested that personnel working for Recleim Nova take steps necessary to transfer to Recleim Nova's assets and titles and/or other ownership documents concerning tractors, trailers and other equipment owned by Nova Services.  In some cases, Defendant's Recleim Nova's failure to pay-off liabilities or liens it had assumed under the terms of the APA prevented the transfer of titles and/or ownership documents.  In other cases, Recleim Nova failed to obtain the requisite insurance so that title could be transferred.

**RESPONSE:** Defendants deny the allegations in Paragraph 27 of the Amended Complaint.

28.

With these mounting breaches with Plaintiff Nova Services as well as other creditors knocking on the door, Defendant Recleim concocted a scheme whereby they would move all of the assets and people to a related company, but at the same time leverage the contracts still held by Recleim.  While certain documents have been withheld to date, Plaintiff Nova Services has uncovered some information as to how this scheme works.

**RESPONSE:** Defendants deny the allegations in Paragraph 28 of the Amended Complaint.

29.

On February 3, 2020, pursuant to a document entitled "Asset Purchase Agreement between Recleim, LLC, as Parent Corporation For Recleim Nova, LLC And Recleim Logistics, LLC and BGL Holdings, LLC Dated As Of February 3, 2020" (the "BGL APA"), Defendants Recleim, LLC, Recleim Nova, LLC and Recleim Logistics, LLC" sold "all of Seller's right, title and interest to all assets, properties, rights and interests …in any way related to, or used in, the Business, other than the Excluded Assets" to BGL Holdings, Inc.  While the term "Excluded Assets" is capitalized,

it is not defined anywhere in the BGL APA and there is no exhibit itemizing any such assets.  As such, it stands to reason that there were no Excluded Assets absent the identification of any.

**RESPONSE:** Defendants admit that Recleim, as parent company for Recleim Nova and Recleim Logistics, entered into an asset purchase agreement with BGL Holdings dated as of February 3, 2020 (the "February 3, 2020 APA").  Defendants further admit that Section 2.01 of the February 3, 2020 APA includes the quoted language in the first sentence of Paragraph 29 of the Amended Complaint.  Defendants deny the remaining allegations in Paragraph 29 of the Amended Complaint.

30.

In addition to Recleim selling all of its assets in the BGL APA, Recleim defines its business as "the business of transportation and logistics services related to haul-away appliances and scrap commodities" [sic]  In the February 3, 2020 BGL APA, Defendants Recleim, LLC, Recleim Nova, LLC and Recleim Logistics, LLC agree:

> In furtherance of the sale the Purchased Assets and to more effectively protect the value and goodwill thereof, except as expressly listed in the Transaction Services Agreement, Seller (each of the Recleim LLCs) covenants and agrees for a period ending on the two-year anniversary of the Closing Date (the "Restricted Period"), that it will not, directly or indirectly (whether as principal, agent, independent contractor, employee, partner or otherwise), own, manage, operate, control, participate in, perform services for, or otherwise carry on, a business competitive with the Business (a "Competing Business") anywhere in the United States (it being understood by the parties hereto that the Business is not limited to any particular region of the United States and that such Business may be engaged in effectively from any location in the United States).

BGL APA ¶6.03.

**RESPONSE:** Defendants admit that the first page of the February 3, 2020 APA includes the quoted language in the first sentence of Paragraph 30 of the Amended Complaint.  Defendants further admit that Section 6.03 of the February 3, 2020 APA includes the quoted language in the second sentence of Paragraph 30 of the Amended Complaint.  Defendants deny the remaining allegations in Paragraph 30 of the Amended Complaint.

31.

As of February 3, 2020, all of the Recleim entities have sold all of their assets to BGL Holdings, LLC and are contracted to be out of business.  BGL Holdings, LLC may, but is not obligated to hire any of Recleim's employees including Nova's owner, Guy Naylor.  *See* BGL APA ¶6.02 "Employee Matters."  The February 3, 2020 BGL APA provides that the Recleim entities to be paid $2.5 million dollars up front and additional $3.3 million dollars over time.[5]  *See* BGL APA ¶3.01.

**RESPONSE:**  Defendants deny the allegations in the first sentence of Paragraph 31 of the

Amended Complaint.  The allegations in the second sentence of the Paragraph 31 of the Amended

Complaint set forth a legal conclusion to which no response is required.  To the extent a response

is required, Defendants deny those allegations.  Responding further, Defendants admit that Section

3.01 of the February 3, 2020 APA provides for a $2.5 million payment to Recleim at closing and

execution of a promissory note by BGL Holdings at closing for an amount equal to $3.3 million.

32.

As of the date of the filing of this First Amended Complaint, Defendants Recleim, Recleim Nova, Blue Granite Logistics and LL Sea Investments have not produced the following relevant documents concerning the February 3, 2020 BGL APA:

List of "Excluded Assets" – an undefined term to which reference is made in Sec. 2.01 at Page RN_0063;[6]

"Exhibit A" re Accounts Payable & Other Current Liabilities of Seller, *see* Sec. 2.03(b)(ii) at Page RN_0063;

"Bill of Sale and Assumption Agreement" *see* Sec. 3.04(a)(ii) at Page RN_0064;

"Exhibit 3.06" *see* Sec. 3.06 entitled "Allocation of Purchase Price" at Page RN_0065;

---

[5] Footnote 2 to the Amended Complaint states, "Plaintiff does not currently know the terms of payment of $3.3 million dollars as the Defendants have not produced the note associated therewith."  To the extent a response is required, Defendants are without knowledge as to what Plaintiff knows about the terms of the referenced payment, but Plaintiff at least knows the amount and timeframe for the payment.

[6] Footnote 3 to the Amended Complaint states, "Page references to 'RN' are references to the 174 pages of Bates-numbered documents produced to date by Defendants.  Plaintiff has produced over 8,000 pages of documents to date."  To the extent a response is required, Defendants admit that "RN" references some of the documents produced by Defendants to date.

"Exhibit B" *see* Sec. 4.14 at Page RN_0067;

Second "Exhibit A" re Leases *see* Sec. 4.15 at Page RN_0067; and

"Exhibit C" re Business Employees *see* Sec. 4.16(a) at Page RN_0068.

**RESPONSE:**  The allegations in Paragraph 32 of the Amended Complaint set forth a legal

conclusion to which no response is required.  To the extent a response is required, Defendants state

the following:

1. no list of excluded assets exists for the February 3, 2020 APA,

2. the referenced exhibit for accounts payable and other liabilities of the seller was not produced in discovery,

3. a Bill of Sale and Assumption Agreement dated February 3, 2020 was previously produced in this case (Recleim Nova, LLC et al._0000131 to 0000132),

4. there is no Exhibit 3.06 to the February 3, 2020 APA, and that the entire purchase price was allocated to BGL Holdings,

5. the referenced exhibit relating to legal proceedings was not produced in discovery,

6. no Exhibit A relating to leases exists for the February 3, 2020 APA, and that the only lease that BGL Holdings or its affiliated entities had at the time of the transaction was an office lease, and

7.  no Exhibit C relating to business employees exists for the February 3, 2020 APA, and that BGL holdings had two employees (Jerome Jones and Rob Slayman) at the time of the transaction.

**Recleim's Next Move, The Next Day, February 4, 2020**

33.

Inexplicably, and with an apparent complete disregard of the BGL APA signed the day before, Recleim, LLC (but not Recleim Nova, LLC or Recleim Logistics, LLC) entered into an Asset Purchase Agreement with Blue Granite Logistics, LLC dated February 4, 2020 (the

"February 4 APA"), to purchase certain assets identified on Exhibit A to the February 4 APA. The assets identified on Exhibit A to the February 4 APA are almost exclusively limited to the assets sold in May 2017 by Plaintiff Nova Services, LLC to Defendant Recleim Nova, LLC, not Recleim, LLC ("Nova Assets"). Defendants have not produced any document that even purports to sell the Nova Assets to Recleim, LLC. The February 4 APA between Recleim, LLC and Blue Granite Logistics, LLC, is a fraudulent and sham transaction because Defendant Recleim did not own most of the assets being transferred. The consideration purported to be paid to Recleim under the February 4 APA is $2.5 million dollars.[7] *See* February 4 APA ¶1.2.[8] Yet, the parties to this fraudulent transaction, Defendants Recleim, LLC, and Blue Granite Logistics, LLC, identified the auction value of the property being transferred by Recleim, LLC at over $4.5 million. *See* Exhibit A to February 4 APA.

**RESPONSE:** Defendants admit that Recleim and Blue Granite Logistics entered into an asset purchase agreement dated as of February 4, 2020 (the "February 4, 2020 APA"). Defendants further admit that Exhibit A to the February 4, 2020 APA lists the purchased assets, that Section 1.2 of the February 4, 2020 APA identifies a purchase price of "Two Million Dollars ("$2,500,000.00), and that Exhibit A to the February 4, 2020 APA identifies a total auction value of $4,638,450.00 for the purchased assets (which includes a premium). Defendants deny the remaining allegations in Paragraph 33 of the Amended Complaint.

34.

Moreover, in the their February 4 APA, Defendants Recleim, LLC and Blue Granite Logistics, LLC, contemplated "a separate Transportation Services Agreement pursuant to which the Buyer will separately provide transportation and other services to the Seller pursuant to the terms thereof." *See* February 4 APA, Recitals 4th paragraph. Yet, the day before in the February 3, 2020 APA with BGL Holdings, LLC, Defendant Recleim, LLC has covenanted to not be in the business and not compete with Defendant BGL Holdings.

**RESPONSE:** Defendants admit the February 4, 2020 APA references negotiations for a separate transportation services agreement. Defendants further admit that the February 3, 2020

---

[7] Footnote 4 to the Amended Complaint states, "Sec. 1.2 of that agreement states that the Purchase Price is "Two Million Dollars ($2,500,000.00)" (sic). Page RN_0077." To the extent a response is required, Defendants admit the referenced language is in the asset purchase agreement.

[8] Footnote 5 to the Amended Complaint states, "Defendants listed the equipment in Exhibit A thereto. All of the equipment listed in the exhibit which references "Nova" in the description previously belonged to Plaintiff Nova Services, LLC." To the extent a response is required, Defendants admits the allegations in this footnote.

APA includes a covenant not to compete.   Defendants deny the remaining allegations in

Paragraph 34 of the Amended Complaint.

35.

Plaintiff is entitled to the discovery of when Blue Granite Logistics, LLC, as the Buye,r [sic] paid $1 million to "Lender;" whether Fifth Third Bank is the Lender; and the dates of "Lender Approval" and the "Closing."  *See* February 4 APA at RN_0077-78.

**RESPONSE:** Defendants deny the allegations in Paragraph 35 of the Amended

Complaint.

**The Recleim and Blue Granite Logistics Transportation Services Agreement Charade**

36.

Approximately one (1) month after entering the BGL APA and the February 4 APA, pursuant to a Transportation Services Agreement dated March 1, 2020 ("March 1 TSA"), Recleim, LLC and Blue Granite Logistics, LLC reach agreement whereby, Blue Granite Logistics will provide Recleim, LLC with the "… applicable equipment, personnel, and technology necessary to perform services required as set forth in the attached Exhibit l."  *See* March 1 TSA ¶A. 1.  Exhibit 1 to the Transportation Services Agreement provides, "Scope of services will be defined between Company and Provider over the course of 3 month period (sic) from March 1, 2020 - September 1, 2020."  *See* March 1 TSA, page 15.  Essentially, Defendant Recleim, LLC and Defendant Blue Granite Logistics, LLC, agreed to postpone until later the determination of what Blue Granite needed to supply in terms of people and equipment in order for Recleim, LLC to continue to operate without equipment and people.[9]   The parties also agreed to figure out later what Blue Granite would charge for these services over the first six (6) months as well.  *See* March 1 TSA Section E.1. and page 15 thereto.

**RESPONSE:** Defendants admit that Recleim and Blue Granite Logistics entered into a

transportation services agreement dated as of March 1, 2020 (the "March 1, 2020 TSA").

Defendants further admit that the March 1, 2020 TSA includes the quoted language in the first and

second sentences of Paragraph 36 of the Amended Complaint.  Responding further, Defendants

admit that, as stated in Exhibits 1 and 2, the parties to the March 1, 2020 TSA identified certain

---

[9] Footnote 6 to the Amended Complaint states, "No additional documents have been provided by Defendants showing what that determination ultimately was."  To the extent a response is required, Defendants admit that they have not produced any such documents.

matters to be resolved between March 1, 2020 and September 1, 2020. Defendants deny the remaining allegations in Paragraph 36 of the Amended Complaint.

37.

The essence of Defendants' fraudulent transactions is Defendant Recleim, LLC sold Defendant Blue Granite Logistics, LLC equipment and assets it did not own; assets that originally belonged to Plaintiff Nova Services, LLC. Defendant Recleim sold those assets for substantially under value - almost 50% of even auction value. The fraudulent nature of the February and March 2020 Recleim and Blue Granite transactions is boldly apparent on its face when this Court looks at the two-page Bill Of Sale And Assumption Agreement dated February 3, 2020. RN_131-2. J. Steve Bush signs the Bill of Sale as CEO of Recleim, LLC for the Seller. Mr. Bush's long time business partner, D. Pete Davis, signs as Manager of Blue Granite Logistics, LLC, the Buyer. The above-described transactions are exactly the type of fraudulent transactions prohibited by the Delaware Uniform Fraudulent Transfer Act.

**RESPONSE:** Defendants admit that Recleim and Blue Granite Logistics entered into a transaction in February 2020, they amended the purchase and sale agreement in March 2020, and that Mr. Davis and J. Steve Bush signed the bill of sale referenced in Paragraph 37 of the Amended Complaint. Defendants deny the remaining allegations in Paragraph 37 of the Amended Complaint.

38.

Based on the relatively small number of documents produced by the Defendants to date, Plaintiff Nova Services reasonably believes that additional discovery will reveal that Defendant Recleim had significant revenue-generating contracts but had accumulated substantial debt and other obligations to its lender, Fifth Third Bank, and other creditors. Plaintiff Nova Services reasonably believes that, following discovery, the evidence will show that the only thing that Defendant Recleim was bringing to the table (by design) was the non-transferable contracts with companies like Lowes. Plaintiff Nova Services further reasonably believes that the evidence at trial also will show that Defendant Blue Granite Logistics, LLC is doing all the work and all of the real money is flowing to Blue Granite Logistics pursuant to the Transportation Services Agreement - an agreement that is barely more than a wink and a handshake.

**RESPONSE:** Defendants deny the allegations in Paragraph 38 of the Amended Complaint.

39.

Although Plaintiff Nova Services has sued for Recleim and Recleim Nova's breach of the 2017 Nova Services APA, the evidence will also establish that all of the Defendants violated the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), 6 *Del. C.* §§ 1301 et seq.

**RESPONSE:** Defendants deny the allegations in Paragraph 39 of the Amended Complaint.

40.

As the direct and proximate result of the intentional and fraudulent acts of the Defendants, Plaintiff Nova Services has sustained damages and losses in excess of the $3,449,567.71 that Recleim Nova owes under to the May 5, 2017 Asset Purchase Agreement.

**RESPONSE:** Defendants deny the allegations in Paragraph 40 of the Amended Complaint.

## <u>COUNT ONE</u>
### (Action Against All Defendants to Set Aside and Annul Fraudulent Conveyances)

41.

Plaintiff Nova Services Inc. hereby incorporates by reference the statements contained in Paragraphs 1 through 40 as if the same were fully set forth in this First Count.

**RESPONSE:** Defendants incorporate their answers to Paragraphs 1 through 40 of the Amended Complaint as if the same were set forth in full herein.

42.

Section 1304(a)(1) of DUFTA provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) In determining actual intent under paragraph (a)(1) of this section, consideration may be given, among other factors, to whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

**RESPONSE:** Paragraph 42 of the Amended Complaint states a legal conclusion for which no response is necessary.

43.

Before and after Pete Davis and Defendant Recleim caused Blue Granite Logistics, LLC to be formed in February 2020 and in violation of DUFTA, Defendants, and each of them, engaged

and/or participated in fraudulent conveyances relating to Reclaim Nova's assets, without fair consideration and/or when either Recleim Nova was insolvent or it was rendered insolvent as a result of such transfers.

**RESPONSE:** Defendants deny the allegations in Paragraph 43 of the Amended Complaint.

44.

Before and after Pete Davis and Defendant Recleim caused Blue Granite Logistics, LLC to be formed in February 2020 and in violation of DUFTA, Defendants, and each of them, engaged and/or participated in fraudulent conveyances relating to Reclaim Nova's assets, as a result of which transaction the property remaining in the hands of Recleim Nova was an unreasonably small capital.

**RESPONSE:** Defendants deny the allegations in Paragraph 44 of the Amended Complaint.

45.

Before and after Pete Davis and Defendant Recleim caused Blue Granite Logistics, LLC to be formed in February 2020 and in violation of DUFTA, Defendants, and each of them, engaged and/or participated in fraudulent conveyances relating to Reclaim Nova's assets and/or incurred obligations, without fair consideration, and/or Defendants either knew or should have known that burdening Recleim Nova with such obligations was fraudulent as to Nova Services because such obligations were beyond Recleim Nova's ability to pay them as they matured.

**RESPONSE:** Defendants deny the allegations in Paragraph 45 of the Amended Complaint.

46.

Defendant Blue Granite Logistics, LLC is neither a bona fide purchaser of Recleim Nova's assets nor a bona fide creditor of Recleim Nova, because all transactions between and among Blue Granite,d [sic] Recleim Nova and other defendants lacked fair consideration and Blue Granite had knowledge of the fraud committed by Recleim Nova, Recleim, and Pete Davis at the time of Blue Granite's purchase of assets or at the time it extended credit to Recleim Nova.

**RESPONSE:** Defendants deny the allegations in Paragraph 46 of the Amended Complaint.

47.

All Defendants, and each of them, engaged and/or participated in fraudulent conveyances relating to Reclaim Nova's assets with actual intent to hinder, delay and defraud Nova Services in violation of DUFTA.

**RESPONSE:** Defendants deny the allegations in Paragraph 47 of the Amended

Complaint.

WHEREFORE, this action is brought and the Plaintiff, Nova Services Inc., prays that judgment be entered in its favor and against the Defendants, Recleim Nova, LLC, Recleim LLC, Blue Granite Logistics, LLC, BGL Holdings, LLC, Recleim Logistics, LLC, LL Sea Investments, LLC, and Blue Granite Freight, LLC, setting aside and annulling all such conveyances, and appoint a receiver or trustee to carry out such actions as the Court deems necessary to implement its judgment, and award the Plaintiff compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus post-judgment interest and costs.

**RESPONSE:** Defendants deny that Plaintiff is entitled to any relief, including, but not

limited to, the relief sought in the above paragraph.  Defendants deny engaging in any wrongdoing

and deny that Plaintiff is entitled to any relief whatsoever against Defendants in this action.

## COUNT TWO
### (Breach of Contract Action v. Defendants Recleim and Recleim Nova)

48.

Plaintiff Nova Services Inc. hereby incorporates by reference the statements contained in Paragraphs 1 through 47 as if the same were fully set forth in this Second Count.

**RESPONSE:** Defendants incorporate their answers to Paragraphs 1 through 47 of the

Amended Complaint as if the same were set forth in full herein.

49.

Plaintiff duly performed all of its obligations under the Asset Purchase Agreement described above. Nevertheless, Defendants Recleim and Recleim Nova, without just cause or excuse, materially breached the APA by failing to pay Nova Services the balance of the purchase price of $3,449,567.71, by failing to provide Nova Services with audited financial statements for Recleim Nova for the tax years of 2018 and 2019, and by failing to hold Nova Services harmless from obligations that Recleim Nova had either assumed or for which it was solely and legally responsible.

**RESPONSE:** Defendants deny that Plaintiff duly performed all of its obligations under

the Asset Purchase Agreement described above.  Defendants deny that Recleim and Recleim Nova, without just cause or excuse, materially breached the May 5, 2017 APA by failing to pay Nova Services the balance of the purchase price of $3,449,567.71, by failing to provide Nova Services with audited financial statements for Recleim Nova for the tax years of 2018 and 2019, and by failing to hold Nova Services harmless from obligations that Recleim Nova had either assumed or for which it was solely and legally responsible.

50.

As a direct and proximate result of said breaches by Defendants Recleim and Recleim Nova, Plaintiff Nova Services has been caused to sustain losses of more than of $3,449,567.71.

**RESPONSE:** Defendants deny the allegations in Paragraph 50 of the Amended Complaint.

WHEREFORE, this action is brought and the Plaintiff, Nova Services Inc., prays that judgment be entered in its favor and against Defendants Recleim Nova, LLC and Recleim LLC and award the Plaintiff compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre- and post-judgment interest and costs.

**RESPONSE:** Defendants deny that Plaintiff is entitled to any relief, including, but not limited to, the relief sought in the above paragraph.  Defendants deny engaging in any wrongdoing and deny that Plaintiff is entitled to any relief whatsoever against Defendants in this action.

## COUNT THREE
### (Fraud Action v. All Defendants)

51.

Plaintiff Nova Services Inc hereby incorporates by reference the statements contained in Paragraphs 1 through 50 as if the same were fully set forth in this Third Count.

**RESPONSE:** Defendants incorporate their answers to Paragraphs 1 through 50 of the Amended Complaint as if the same were set forth in full herein.

52.

Defendants, and each of them, have acted intentionally and maliciously to defraud and deceive Nova Services and to hide and conceal Recleim Nova's assets as described in paragraphs 19 through 37.

**RESPONSE:** Defendants deny the allegations in Paragraph 52 of the Amended Complaint.

WHEREFORE, this action is brought and the Plaintiff, Nova Services Inc., prays that judgment be entered in its favor and against Defendants Recleim Nova, LLC, Recleim LLC, Blue Granite Logistics, LLC, BGL Holdings, LLC, Recleim Logistics, LLC, LL Sea Investments, LLC, and Blue Granite Freight, LLC, and award the Plaintiff compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), and punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00, [sic] plus pre- and post-judgment interest and costs.

**RESPONSE:** Defendants deny that Plaintiff is entitled to any relief, including, but not limited to, the relief sought in the above paragraph.  Defendants deny engaging in any wrongdoing and deny that Plaintiff is entitled to any relief whatsoever against Defendants in this action.

## **GENERAL DENIAL**

All allegations not specifically admitted are denied.  All relief requested is specifically denied.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendants hereby set forth the following affirmative and additional defenses to the Amended Complaint, but Defendants do not assume the burden of proof on any of these defenses except as required by applicable law with respect to a particular defense asserted.  Defendants further reserve the right to assert other affirmative and additional defenses and/or otherwise to supplement this Answer upon discovery of facts or evidence rendering such action appropriate.

### FIRST DEFENSE

Plaintiff's breach of contract claim against Recleim and Recleim Nova fails because they did not breach the parties' May 5, 2017 APA with Plaintiff.

### SECOND DEFENSE

Plaintiff materially breached the May 5, 2017 APA in numerous respects and made false representations in the Asset Purchase Agreement.  Therefore, any conduct by Recleim or Recleim Nova that violates the terms of the May 5, 2017 APA is excused.

### THIRD DEFENSE

Plaintiff's breach of contract claim against Recleim and Recleim Nova fails because any alleged nonperformance or breach of contract is incidental to the object of the contract and/or not material.

### FOURTH DEFENSE

Plaintiff's claims fail because the alleged transactions complained of did not violate any contractual or other obligation to Plaintiff or violate any applicable legal principle.

### FIFTH DEFENSE

Plaintiff's claims fail because, as expressly agreed to by Plaintiff, Recleim and Recleim Nova did not have an obligation to operate the business in a manner to achieve any deferred purchase price payment or to maximize such amount.

**SIXTH DEFENSE**

Plaintiff's claims fail because, as expressly agreed to by Plaintiff, Recleim and Recleim Nova have sole discretion with regard to all matters relating to the operation of the business.

**SEVENTH DEFENSE**

Plaintiff's claims against Defendants fail because it, and its principal Guy Naylor, have unclean hands, including but not limited to their respective breaches of the May 5, 2017 APA and Mr. Naylor's employment agreement.  This includes, but is not limited to, their respective violations of their non-competition obligations.

**EIGHTH DEFENSE**

Plaintiff's claims are barred in whole or in part by and improper under the Agreement and Release entered into by Plaintiff, Guy Naylor, Recleim, and Recleim Nova on January 3, 2019, in which Plaintiff and Mr. Naylor, in exchange for good and valuable consideration in the form of a payment of $1.6 million, agreed to "fully and forever release and discharge Recleim, Recleim Nova and any and all of their respective affiliates, officers, directors, principals, partners, members, controlling persons, trustees, representatives, agents, heirs, successors, assigns, and employees (the "Releasees") from any and all claims, charges, complaints, damages, demands, suits, liabilities, judgments or causes of action of any kind or nature whatsoever, presently known or unknown, direct or consequential, equitable or legal, foreseen or unforeseen, matured or unmatured, developed or undeveloped, concealed or unconcealed, which the Releasors might have had, may now have, or may claim to have, from the beginning of time until the date of this Agreement (the "Potential Claims") related in any way or otherwise connected in any way to . . . the operation of the business of Recleim, Recleim Nova or any of their Affiliates."  Plaintiff and Mr. Naylor also agreed that this Agreement and Release may be pleaded by the Releasees as a

complete defense and used as the basis for an injunction against any proceeding brought or maintained against any of them.

## NINTH DEFENSE

To the extent Plaintiff is entitled to any recovery, which Defendants deny, Defendants are entitled to offset for prior payments made.

## TENTH DEFENSE

Plaintiff's claims against Defendants are barred by accord and satisfaction.

## ELEVENTH DEFENSE

Plaintiff's claims against Defendants fail because all actions taken by Defendants were taken in good-faith, in the normal course of business, and/or at Plaintiff's and Mr. Naylor's request or consent.

## TWELFTH DEFENSE

Plaintiff's claims against Defendants fail, in whole or in part, because they are time-barred by the applicable statute of limitations.

## ADDITIONAL DEFENSES

Defendants reserve the right to assert any additional defenses that may become relevant or apparent through the course of discovery or otherwise during the course of this litigation.

## FIRST AMENDED COUNTERCLAIMS

Recleim Nova, LLC ("Recleim Nova") and Recleim LLC ("Recleim") (collectively, "Counterclaim-Plaintiffs"), by and through counsel, hereby file their first amended counterclaims against Nova Services, Inc. ("Nova Services" or "Counterclaim-Defendant"), and respectfully show the Court as follows:

1.

Counterclaim-Plaintiffs bring these counterclaims to seek damages for Nova Services' wrongful actions in connection with the May 5, 2017 Asset Purchase Agreement (the "May 5, 2017 APA") and the January 3, 2019 Agreement and Release, both of which were entered into by Nova Services, Recleim, and Recleim Nova. Attached hereto as Exhibits A and B are true and correct copies of the May 5, 2017 APA and the January 3, 2019 Agreement and Release, respectively.

## PARTIES

2.

Nova Services is a Maryland corporation.

3.

Recleim Nova is a Delaware limited liability company with its principal offices at 34 Old Ivy Road, Suite 200, Atlanta, Georgia.

4.

Recleim is a Delaware limited liability company with its principal offices at 34 Old Ivy Road, Suite 200, Atlanta, Georgia.

## JURISDICTION

5.

This Court has diversity jurisdiction over this matter because the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between Recleim Nova, Recleim, and Nova Services under 28 U.S.C. § 1332.

6.

This Court also has supplemental jurisdiction over this action under 28 U.S.C. § 1367.

7.

Nova Services is subject to the jurisdiction of this Court.  Nova Services is also subject to the jurisdiction of the courts sitting in the state of Delaware, pursuant the May 5, 2017 APA between Nova Services, Recleim, and Recleim Nova, which provides that the federal and state courts of Delaware have exclusive jurisdiction over any legal suit, action or proceeding arising out of or based upon the May 5, 2017 APA or transactions contemplated therein.

8.

Venue in the state courts of Delaware located in the City of Wilmington and County of New Castle over the claims of Recleim and Recleim Nova is proper, as the May 5, 2017 APA expressly contemplates venue in these courts over such claims.  Likewise, venue over the claims of Recleim and Recleim Nova in the federal courts of Delaware located in the City of Wilmington and County of New Castle is proper, as the May 5, 2017 APA expressly contemplates venue in these courts over such claims.

## FACTS AND ALLEGATIONS

9.

Nova Services, as seller, and Recleim and Recleim Nova as buyers, entered into the May 5, 2017 APA for the purchase and sale of certain rights and obligations (collectively, the Purchased Assets and the Assumed Liabilities”).  The form of the transaction was an asset purchase.  Among other consideration provided to Nova Services, Recleim Nova paid Nova Services $750,000 at closing, and Recleim issued certain Class C Interests in the equity of Recleim.

10.

Section 2.01 of the May 5, 2017 APA states, in part, the following:  “Subject to the terms and conditions set forth herein, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller’s right, title and interest to all assets, properties,

rights and interests, of any kind and description (whether real or personal, tangible or intangible, fixed, contingent or otherwise), wherever located and by whomever possessed, in any way related to, or used in, the Business, other than the Excluded Assets (collectively, the '**Purchased Assets**'), free and clear of any Encumbrance."

11.

Section 4.03 of the May 5, 2017 APA states, in part, "[e]xcept as set forth in <u>Section 4.03</u> of the Disclosure Schedules, Seller owns and has good title to the Purchased Assets, free and clear of Encumbrances."

12.

The May 5, 2017 APA also included heavily negotiated disclosure provisions and requirements.

13.

Prior to, at the time of, and after the execution of the May 5, 2017 APA, Nova Services represented that it was capable of performing, and intended to perform, all of its obligations under the May 5, 2017 APA.

14.

Nova Services' representations regarding its ability and intent to perform all of its obligations under the May 5, 2017 APA were false.

15.

On May 19, 2017, in an email exchange between Nova Services managers Hans Schwieger and Billie Porter, Mr. Schwieger, rather remarkably, noted "major issues" with identifying the assets required to be transferred to purchasers under the May 5, 2017 APA and his concern that **"[Nova Services] ha[s] bogus assets"** (emphasis added).  Enclosed as Exhibit C is a true and correct copy of the May 19, 2017 email between Mr. Schwieger and Ms. Porter.

16.

Despite its representations prior to, at the time of, and after the execution of the May 5, 2017 APA regarding its assets and intent and ability to transfer those assets to Recleim and Recleim Nova, Nova Services knew or should have known those representations to be false.

17.

Nova Services also misrepresented in the May 5, 2017 APA its compliance with all laws, including its compliance with various employment laws, when it knew or should have known it was not in compliance with all such laws.

18.

Nova Services did not intend to perform all of its obligations under the May 5, 2017 APA.

19.

After execution of the May 5, 2017 APA, Nova Services did not provide good and clear title to certain of the Purchased Assets, including trailers that were in the name of Nova Services.

20.

After the execution of the May 5, 2017 APA, and even to this day, Nova Services continues to hold at least some of the Purchased Assets that should have been transferred to Recleim and Recleim Nova pursuant to the May 5, 2017 APA.

21.

After execution of the May 5, 2017 APA, Nova Services continued to operate as a corporation.  Nova Services has continuously operated as a corporation since execution of the May 5, 2017 APA.

22.

Guy Naylor was the President of Nova Services at the time of execution of the May 5, 2017 APA, and Mr. Naylor has continuously been the President of Nova Services since that time.

23.

Upon information and belief, Mid Atlantic Express, LLC ("Mid Atlantic") is a limited liability company that was incorporated under the laws of Maryland on January 24, 2020.

24.

Upon information and belief, Mr. Naylor is an officer, director, or agent of Mid Atlantic.

25.

Upon information and belief, Mid Atlantic's principal offices are located at 25 Thomas Avenue, Baltimore, Maryland.

26.

Upon information and belief, Nova Services also has offices located at 25 Thomas Avenue, Baltimore, Maryland.

27.

After execution of the May 5, 2017 APA, at least some of the Purchased Assets, including trailers that were in the name of Nova Services, which were never transferred to Counterclaim-Plaintiffs as required under the May 5, 2017 APA, were transferred from Nova Services to Mid Atlantic.

28.

After execution of the May 5, 2017 APA, and at the direction of Nova Services, Mid Atlantic took at least some of the Purchased Assets from office space located in Connecticut, without the authorization of Recleim Nova or Recleim.

29.

Upon information and belief, Mr. Naylor is an officer, director, or agent of Interglobal Logistics Corp. ("Interglobal").

30.

Upon information and belief, Mr. Naylor was also an officer, director, or agent of Interglobal prior to and at the time of execution of the May 5, 2017 APA.

31.

Prior to, at the time of, and after execution of the May 5, 2017 APA, Mr. Naylor did not disclose to Recleim and Recleim Nova that he was and is an officer, director, or agent of Interglobal.

32.

Interglobal's activities include the export of materials, such as recycled appliances.

33.

After execution of the May 5, 2017 APA, through Mr. Naylor's efforts and management, Recleim Nova sent increased amounts of recycled appliances to Interglobal, for export, instead of pursuing more profitable revenue streams, such as the resale of appliances.

34.

After execution of the May 5, 2017 APA, despite having agreed to a non-competition covenant in the May 5, 2017 APA and without permission, Nova Services engaged in competitive business activities, namely running the substantially same business, within the prohibited territory, the United States.  This conduct directly violated Nova Services' non-competition obligations. This conduct diverted business and business opportunities from Recleim Nova to Nova Services. In addition, with the support of Nova Services, its President, Mr. Naylor, violated his non-competition obligations to Recleim Nova.

35.

After execution of the May 5, 2017 APA, Nova Services and its President, Mr. Naylor, also violated their non-competition obligations through Mid Atlantic, Interglobal, and other entities.

36.

In competing against Recleim Nova, without permission, Nova Services used and disclosed confidential information regarding Recleim Nova's business, including but not limited to its operation methods, pricing and customer and business relation information.  This violated Nova Services' obligation under the May 5, 2017 APA to "hold in confidence at all times following Closing all Confidential Information and [not to] disclose, publish, or make use of Confidential Information at any time following the date [of Closing] with the prior written consent of [Recleim Nova]."

37.

On January 3, 2019, Nova Services, Mr. Naylor (Nova Services' President), Recleim, and Recleim Nova entered into an Agreement and Release in which Recleim agreed to pay $1.6 million by wire transfer of immediately available funds to an account designated in writing by Mr. Naylor. In exchange, Nova Services and Mr. Naylor agreed to "fully and forever release and discharge Recleim, Recleim Nova and any and all of their respective affiliates, officers, directors, principals, partners, members, controlling persons, trustees, representatives, agents, heirs, successors, assigns, and employees (the "Releasees") from any and all claims, charges, complaints, damages, demands, suits, liabilities, judgments or causes of action of any kind or nature whatsoever, presently known or unknown, direct or consequential, equitable or legal, foreseen or unforeseen, matured or unmatured, developed or undeveloped, concealed or unconcealed, which the Releasors might have had, may now have, or may claim to have, from the beginning of time until the date of this

Agreement (the "Potential Claims") related in any way or otherwise connected in any way to the Class C Interests or the operation of the business of Recleim, Recleim Nova or any of their Affiliates."

38.

Nova Services and Mr. Naylor also agreed that the January 3, 2019 Agreement and Release may be pleaded by Recleim and Recleim Nova as a complete defense and used as the basis for an injunction against any proceeding brought or maintained against any of them.

39.

Recleim and Recleim Nova complied with the January 3, 2019 Agreement and Release by making the $1.6 million payment.

40.

Despite entering into the January 3, 2019 Agreement and Release, and despite Recleim and Recleim Nova's compliance with such agreement, in contravention of its commitment under this agreement, on August 3, 2020 Nova Services brought the instant lawsuit against Recleim and Recleim Nova in the Circuit Court of Baltimore County, Maryland.  Through this lawsuit, which it has continued to maintain, Nova Services is asserting claims it waived through the January 3, 2019 Agreement and Release.

## COUNT I
## BREACH OF CONTRACT [ASSET PURCHASE AGREEMENT]
### (By Recleim Nova, LLC and Recleim LLC)

41.

Counterclaim-Plaintiffs repeat and reallege by reference each of the facts and allegations stated in the foregoing paragraphs 1 through 40 as if fully stated herein.

42.

The May 5, 2017 APA is a valid contract between Nova Services, Recleim, and Recleim Nova. Nova Services received good and valuable consideration for entering into such agreement.

43.

Recleim and Recleim Nova materially complied with the May 5, 2017 APA prior to any material breaches of the May 5, 2017 APA by Nova Services as described below.

44.

Nova Services breached the May 5, 2017 APA in numerous respects, including:

(a) failing to provide Recleim Nova with the Purchased Assets in the manner intended for their use in the business;

(b) failing to provide good and clear title to Recleim Nova all of the Purchased Assets as set forth in the May 5, 2017 APA, including trailers purchased by Recleim Nova;

(c) misrepresenting and failing to disclose the relationship between Nova Services and Interglobal;

(d) misrepresenting its compliance with all applicable laws, including its compliance with various employment laws;

(e) breaching its covenant not to compete, by performing competitive services and carrying on a competitive business during the restricted period in the United States under the May 5, 2017 APA; and

(f) breaching its confidentiality obligations, through its use of confidential information in order to perform competitive services and carry on a competitive business in contravention of the May 5, 2017 APA.

45.

As a direct and proximate result of Nova Services' breaches, Recleim and Recleim Nova have suffered damages in an amount to be proven at trial.

46.

Recleim and Recleim Nova are entitled to compensatory and expectation damages in an amount to be proven at the trial of this action.

## COUNT II
## BREACH OF CONTRACT [JANUARY 3, 2019 AGREEMENT AND RELEASE]
### (By Recleim Nova, LLC and Recleim LLC)

47.

Counterclaim-Plaintiffs repeat and reallege by reference each of the facts and allegations stated in the foregoing paragraphs 1 through 46 as if fully stated herein.

48.

The January 3, 2019 Agreement and Release is a valid contract between Nova Services, Recleim, and Recleim Nova.  Nova Services received good and valuable consideration for entering into such agreement.

49.

Recleim and Recleim Nova complied with the January 3, 2019 Agreement and Release through the $1.6 million payment described therein.

50.

Despite this, Nova Services has materially breached the January 3, 2019 Agreement and Release by bringing forth claims released pursuant to that agreement.

51.

As a direct and proximate result of Nova Services' breach, Recleim and Recleim Nova have suffered damages in an amount to be proven at trial.

52.

In addition to being entitled to compensatory and expectation damages, Recleim and Recleim Nova are also entitled to injunctive relief.

## COUNT III
## FRAUD IN THE INDUCEMENT [ASSET PURCHASE AGREEMENT]
### (By Recleim Nova, LLC and Recleim LLC)

53.

Counterclaim-Plaintiffs repeat and reallege by reference each of the facts and allegations stated in the foregoing paragraphs 1 through 52 as if fully stated herein.

54.

Prior to and at the time of execution of the May 5, 2017 APA (as well as after execution of the May 5, 2017 APA), Nova Services did not have all of the Purchased Assets, or the intent to transfer those assets to Recleim and Recleim Nova.

55.

While specifically identifying the excluded assets in Exhibit 2.02(e) to the May 5, 2017 APA, Nova Services misrepresented its possession of the Purchased Assets, as well as its intent to transfer those assets to Recleim and Recleim Nova, prior to and at the time of execution of the May 5, 2017 APA (as well as after execution of the May 5, 2017 APA), including, for example, through the listing of assets Nova Services provided during due diligence.

56.

Furthermore, Nova Services deliberately concealed its actual assets, or lack of assets, during negotiations with Recleim and Recleim Nova regarding the May 5, 2017 APA.

57.

Nova Services made these misrepresentations knowingly and with knowledge of their falsehood.

58.

Nova Services made these misrepresentations with the intent to induce, and in fact did induce, Recleim and Recleim Nova to enter into the May 5, 2017 APA.

59.

Recleim and Recleim Nova detrimentally relied on Nova Services' misrepresentations. Indeed, but for Nova Services' misrepresentations, Recleim and Recleim Nova would have not entered into the May 5, 2017 APA, or would have paid substantially less.

60.

Nova Services also misrepresented, through failure to disclose and deliberate concealment, Mr. Naylor's relationship to Interglobal, as well as the intent to send increased amounts of recycled appliances to Interglobal, for export, instead of pursuing more profitable revenue streams, such as the resale of appliances.

61.

Nova Services misrepresented, though failure to disclose and deliberate concealment, Mr. Naylor's relationship to Interglobal, and the intent to send increased amounts of recycled appliances to Interglobal, during negotiations with Recleim and Recleim Nova regarding the May 5, 2017 APA.

62.

Nova Services made these misrepresentations knowingly and with knowledge of their falsehood.

63.

Nova Services made these misrepresentations with the intent to induce, and in fact did induce, Recleim and Recleim Nova to enter into the May 5, 2017 APA.

64.

Recleim and Recleim Nova detrimentally relied on Nova Services' misrepresentations. Indeed, but for Nova Services' misrepresentations, Recleim and Recleim Nova would have not entered into the May 5, 2017 APA, or would have paid substantially less.

65.

Recleim and Recleim Nova materially complied with the May 5, 2017 APA.

66.

Recleim and Recleim Nova are entitled to rescissory damages as a result of Nova Services' fraud in the inducement relating to the May 5, 2017 APA.

WHEREFORE, having stated its counterclaims, affirmative, and additional defenses and having responded to the specific allegations contained in the Complaint, Defendants and Counterclaim-Plaintiffs respectfully pray as follows:

(A)     that judgment be rendered for Defendants and Counterclaim-Plaintiffs and against Plaintiff and Counterclaim-Defendant and award Counterclaim-Plaintiffs compensatory and expectation damages in an amount to be proven;

(B)     that rescissory damages be granted against Counterclaim-Defendant for fraudulently inducing Counterclaim-Plaintiffs to enter into the May 5, 2017 APA;

(C)     alternatively, an order for specific performance of the May 5, 2017 APA;

(D)     that injunctive relief be granted, enjoining Plaintiff from pursuing released claims;

(E)     that Plaintiff's Complaint be dismissed in its entirety with prejudice;

(F)   that costs and attorneys' fees be assessed against Plaintiff and Counterclaim-Defendant as provided by applicable law;

(G)   pre- and post-judgment interest on Counterclaim-Plaintiffs' recovery; and

(H)   that Defendants and Counterclaim-Defendant be awarded other and further relief as it deems just and appropriate.

Dated: June 17, 2022

OF COUNSEL:

Robert T. Dumbacher
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216
Telephone:  404-888-4000
Facsimile:  404-888-4190
rdumbacher@HuntonAK.com

*/s/ Travis S. Hunter*
Travis S. Hunter (#5350)
Alexandra M. Ewing (#6407)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
hunter@rlf.com
ewing@rlf.com

***Attorneys for Defendants***